*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1080**

Robin Larson,
Relator,

vs.

Capstone Services, LLC,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed June 8, 2015
Affirmed
Stauber, Judge**

Department of Employment and Economic Development
File No. 32237007-3

Donald C. Erickson, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, Minnesota (for relator)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Relator challenges the unemployment law judge's (ULJ) decision that she was

ineligible for unemployment benefits because she was discharged for employment

misconduct. Because relator's conduct of gossiping about co-workers evinced a serious violation of the conduct the employer had a right to reasonably expect, we affirm.

## FACTS

In November 2003, relator Robin Larson began working for respondent Capstone Services LLC, an entity that operates group homes for developmentally disabled adults. In 2010, relator was promoted to lead habilitation specialist. But about three years later, on February 6, 2013, relator received her first written warning for (1) "talking to others about concerns, complaints and/or disagreements regarding certain co-workers"; (2) failing to complete "certain duties and responsibilities in a satisfactory manner"; (3) failing to properly administer medication; and (4) unsatisfactory performance as a Lead Habilitation Specialist. The written warning noted that under Capstone's code of conduct policy, relator was expected to maintain positive working relations with staff members and "[a]void any public acts or statements detrimental to the interests of [Capstone] or any of its consumers and any other employees."

Relator received a second written warning on February 19, 2013, after she started complaining at a staff meeting about her supervisor and "other coworkers in front of workers that did not work at that same program." Relator was warned that her "statements did not encourage positive working relations nor promote a positive demeanor as a Lead Habilitation Specialist" as outlined by the position's job requirements. She was also warned for failing to complete a directive by a Capstone nurse. The written warning stated that "you are on a **Final Notice**" and that "[i]f you fail to comply with the expectations . . . or if

2

you are negligent in any other areas of your job performance, you will be subject to further disciplinary action up to and including suspension and/or termination."

Despite these warnings relator received a two-day suspension in June 2013, for "[g]ossiping" about a co-worker. The written suspension reminded relator that her "employment is in jeopardy" and that failure to comply with her employment expectations could result in termination.

On January 29, 2014, Capstone employee, B.P., called to complain about relator. B.P. was crying and upset and stated that she no longer wanted to work with relator because she created a "negative atmosphere" by "gossiping about people [and] complaining about wanting to get people fired." Human resources then scheduled a meeting with relator for February 7, 2014. The day before the meeting, relator called her supervisor to express her concern about the meeting. During the conversation, relator admitted to her supervisor that she should not have been "gossiping" about other people.

Relator's employment with Capstone was terminated on February 7, 2014. Relator subsequently applied for unemployment benefits with respondent Minnesota Department of Employment and Economic Development (department) and was deemed ineligible for benefits because she had been discharged for employment misconduct. Relator appealed that determination and, following a de novo hearing, the ULJ found that despite receiving multiple warnings to refrain from gossiping about co-workers, relator continued to violate Capstone's policy prohibiting gossiping at work. The ULJ concluded that relator's "actions evinced a serious violation of the standards of behavior Capstone had the right to

3

reasonably expect" and, therefore, relator was discharged for employment misconduct. Relator requested reconsideration, and the ULJ affirmed. This certiorari appeal followed.

**D E C I S I O N**

When reviewing a ULJ's eligibility decision, this court may affirm, remand for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d) (2014). We view the ULJ's factual findings in the light most favorable to the decision and defer to the ULJ's credibility determinations. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). We "will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Id.*

An employee who was discharged is eligible for unemployment benefits unless the discharge was for employment misconduct. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.,* subd. 6(a) (2014). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Peterson*, 753 N.W.2d at 774. Whether the employee committed the act is a fact question. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But whether the employee's

4

act constitutes employment misconduct is a question of law, which is reviewed de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

Relator argues that the ULJ erred by concluding that she engaged in employment misconduct because "[t]ruthful statements about the performance of co-employees are not misconduct." We disagree. "An employer has a right to expect that its employees will abide by reasonable instructions and directions." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004). "[W]hat is reasonable will vary according to the circumstances of each case." *Id.* (quotations omitted). A knowing violation of an employer's directives, policies, or procedures is employment misconduct because it demonstrates a willful disregard of the employer's interests. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806 (Minn. 2002). "This is particularly true when there are multiple violations of the same rule involving warnings or progressive discipline." *Id.* at 806-07.

Here, Capstone's code of conduct required its employees to "[a]void any disorderly conduct . . . against any other employee," and to "[a]void any public acts or statements detrimental to the interests of [Capstone] or any of its consumers and any other employees." Capstone's policy was reasonable and intended for the Lead Habilitation Specialist to maintain a positive demeanor and encourage positive working relations. Relator violated this policy on several occasion by gossiping about co-workers, and she received several warnings for violating this policy. In fact, relator admitted to her supervisor shortly before her employment was terminated that she should not have been "gossiping" about other people. Although some of relator's statements might have

been "truthful," the statements still violate the policy because they create a negative work environment, which could be avoided if relator had simply reported the co-worker's shortcomings to a supervisor and allowed the supervisor to address the situation rather than gossiping about it to other employees. And the multiple warnings relator received demonstrates that she was aware of Capstone's policy and knowingly disregarded the policy by continuing to gossip about co-workers. Relator's knowing disregard of Capstone's reasonable policy constitutes employment misconduct. *See Sandstrom v. Douglas Mach. Corp.*, 372 N.W.2d 89, 91 (Minn. App. 1985) (stating that as a general rule, if an employer's request is reasonable and does not impose an unreasonable burden on the employee, the employee's refusal to abide by the request constitutes misconduct).

Relator also argues that the district court's misconduct finding is not supported by the record because, in the absence of supporting witness testimony, the hearsay allegation in the termination letter that she failed to follow the proper protocol for the administration of medicine is insufficient to demonstrate that she committed employment misconduct. But the ULJ never found that relator committed employment misconduct on the basis that she failed to properly administer medicine. Rather, the employment misconduct determination was premised upon relator's gossiping about co-workers in violation of Capstone's reasonable employee conduct policy. And, as we concluded above, relator's conduct constituted employment misconduct.

**Affirmed.**

6